UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER SPURLOCK,

    Plaintiff,

v.                                              Case No. 3:19cv3592-MCR-HTC

JAMES D. BURNHAM, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Christopher Spurlock, proceeding *pro se*, files this action seeking monetary damages under 42 U.S.C. § 1983 against officers of the Okaloosa County Sheriff's Office ("OCSO") for events arising out of his arrest. This matter is before the Court on Defendant James D. Burnham's Motion to Dismiss Plaintiff's Amended Complaint. ECF Doc. 11. After reviewing the motion, the record, and the relevant law, the undersigned respectfully recommends that Defendant's motion (ECF Doc. 11) be GRANTED. Additionally, because the basis of the dismissal as to Defendant Burnham also applies to all the Defendant John Doe Officers, the undersigned further recommends a dismissal of this action.

## I.  BACKGROUND

Plaintiff is a former inmate of the Florida Department of Corrections ("FDOC").[1]  He files this action against ten (10) defendants: Deputy James D. Burnham and nine (9) John Doe OCSO officers.  The amended complaint (ECF Doc. 4) sets forth the factual allegations that follow, the truth of which is accepted for purposes of this order.

On the night of September 24, 2017 through the morning of September 25, 2017, two (2) OCSO deputies, one of which was Defendant Burnham, attempted to serve Plaintiff an arrest warrant at an apartment building.  The deputies "yelled and banged on the front door, and shown their flashlights through the front and back windows." *Id.* at 8.  Subsequently, Plaintiff "crawled through the adjoining attic to the neighboring, empty rental unit … in search for a secluded place to commit suicide." *Id.*

"Various unknown deputies and officers" spoke with Plaintiff's wife and brother-in-law, and Plaintiff's wife told those deputies and officers that "Plaintiff was unarmed and suffered from PTSD." *Id.*  Plaintiff's friend then arrived at the scene and "told deputies that Plaintiff may be suicidal." *Id.*  The deputies "called for K9 units" and surrounded the apartment building. *Id.*

---

[1] At the time of filing the initial complaint, Plaintiff was an inmate incarcerated at Hamilton Correctional Institution.  *See* ECF Doc. 1 at 1-2.  However, it appears that Plaintiff has since been released from FDOC custody and now resides in Roanoke, Texas.  *See* ECF Docs. 14, 15.

Case No. 3:19cv3592-MCR-HTC

Plaintiff then "used the attic door to gain access to the [neighboring] empty rental unit where he [grabbed] a butcher knife from the kitchen and place[d] it in the bathroom." *Id.* "After a few minutes of contemplating suicide," Plaintiff left the bathroom "to assess the situation." *Id.* As Plaintiff walked by a bedroom window, a deputy fired three (3) shots at the window with "what appear[ed] to be his service pistol." *Id.* The shots "scared the Plaintiff and caused him to barricade himself in the bathroom, at which time he cut both wrists several times." *Id.*

Deputies then entered the adjoining apartment, but they could not enter the bathroom because "Plaintiff used his body to barricade the door and threatened to 'off himself' if they tried entering." *Id.* The standoff lasted for approximately two (2) hours with intermittent communication between Plaintiff and the deputies. For instance, (1) the deputies asked Plaintiff if he had a gun, and Plaintiff said no; (2) the deputies asked Plaintiff if he planned on hurting anyone, and Plaintiff said no; and (3) Plaintiff asked to speak with his wife, and a deputy told him no. Plaintiff alleges that, due to blood loss, he lost consciousness "a few times, which was observed by the deputies when they said, 'he fell asleep.'" *Id.* at 9. The deputies would then yell at Plaintiff to wake him up and try to coax him out of the bathroom.

Plaintiff was "laying in a pool of his own blood" when an officer "fired [an] oc/cs canister through the closed door of the small bathroom," which caused Plaintiff's "heart to race and lungs to cease eventually." *Id.* Deputies then ordered

Plaintiff to exit the bathroom with his hands up, but Plaintiff was too weak to stand, and he told the deputies, "I can't, I lost too much blood." *Id.* Deputies ignored the statement and again ordered Plaintiff to exit the bathroom with his hands up. Plaintiff then opened the door and "hurled his upper body over the threshold with his lacerated wrists facing upwards in clear view of the deputies." *Id.*

The deputies told Plaintiff to get up several times, but Plaintiff "was in a coma" because of his blood loss. *Id.* Thus, the deputies grabbed Plaintiff by his lacerated wrists and dragged him out of the apartment, "adding to his profusive blood loss." *Id.* As "Plaintiff lay there unresponsive and not [breathing]," he was handcuffed over his lacerations. *Id.* at 10. Plaintiff alleges the deputies did not attempt to render any aid to him at any time, although he admits he was placed on a stretcher and carried to an ambulance.

Inside the ambulance, an EMT asked the present officers about Plaintiff's status, and a deputy said, "He's faking." *Id.* The EMT asked how much blood Plaintiff lost, and the deputy said, "Not much." *Id.* However, the EMT inserted an IV and said, "I don't think he is faking. I just stuck a big ass needle [into] him and he didn't even flinch." *Id.* At that point, the EMT allegedly realized Plaintiff was not breathing. The EMT tried to intubate Plaintiff but was unsuccessful because Plaintiff's "airways had swollen due to the oc/cs gas." *Id.* Thus, the EMT manually administered air to Plaintiff.

Plaintiff was then admitted to the Intensive Care Unit ("ICU") at Fort Walton Beach Medical Center, where he was successfully intubated and where he remained for three (3) days.  On Plaintiff's first day in the ICU, two (2) deputies laughed at Plaintiff and said, "He's not coming back from this." *Id.* at 11.  On Plaintiff's third day in the ICU, Plaintiff regained consciousness and was admitted to the psychiatric ward where he was diagnosed with PTSD and Major Depressive Disorder.

Based on the foregoing, Plaintiff alleges Defendants (1) were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment; (2) willfully and intentionally inflicted emotional distress upon Plaintiff in violation of state law; and (3) acted with gross negligence in violation of state law.  As relief, Plaintiff seeks "10 million dollars in compensatory damages, 1 dollar in nominal damages, and 50 million dollars in punitive damages." *Id.* at 12.

## II.   LEGAL STANDARD

When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citation omitted).

Also, in considering a motion to dismiss for failure to state a claim, the Court reads Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and accepts "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts . . . as true." *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004) (citation omitted).

## III.  ANALYSIS

Defendant Burnham moves for dismissal on the following grounds: (1) Claims against Defendant in his official capacity should be brought against the agency; (2) Claims against Defendant in his individual capacity are barred by the doctrine of qualified immunity; and (3) Plaintiff has not alleged facts sufficient to establish the elements of his state law claims.

As an initial matter, the undersigned finds it unnecessary to address either the official capacity argument or state law claims in detail.  First, reading Plaintiff's initial complaint (ECF Doc. 1) and amended complaint together, it appears that Plaintiff seeks to sue Defendant in his individual, rather than official, capacity. *See Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 170, n. 15 (D.D.C. 2013), *aff'd*, 796 F.3d 1 (D.C. Cir. 2015) ("[t]he Court may consider the original Complaint and Plaintiffs' other filings, including sworn statements, in evaluating the Amended Complaint [on a MTD]").  Second, because the undersigned finds dismissal warranted as to the sole federal claim, the undersigned recommends that the Court decline jurisdiction over

the state law claims. *See e.g., Bruce v. U.S. Bank N.A.*, 770 F. App'x 960, 966 (11th Cir. 2019), citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, n. 7 (1988) ("[a] district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction").

As discussed further below, the undersigned agrees with Defendant that that dismissal is warranted on Plaintiff's federal claim because Plaintiff has failed to set forth facts sufficient to show that Defendant violated the Fourteenth Amendment.[2] Specifically, Plaintiff has not alleged facts sufficient to show either that Defendant had knowledge that Defendant was in a serious risk of harm or that Defendant disregarded that risk. Thus, there being no constitutional violation, Defendant is entitled to qualified immunity as a matter of law.

Qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Whitner v. Moore*, 160 F. App'x 918, 919 (11th Cir. 2005) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002))w. "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of

---

[2] Although Plaintiff alleges Defendant Burnham was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, the undersigned will analyze Plaintiff's allegations under the Fourteenth Amendment Due Process Clause. *See Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007) ("Technically, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees….[] However, the standards under the Fourteenth Amendment are identical to those under the Eighth").

Case No. 3:19cv3592-MCR-HTC

personal liability or harassing litigation … protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Id.* (citations and quotations omitted). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Id.*

To be shielded from suit by qualified immunity, a public official must first show that he was acting within the scope of his discretionary authority. *Whitner*, 160 F. App'x at 919, citing *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002). During the events in question, Defendant was on duty and participating in serving an arrest warrant in his capacity as a law enforcement officer for the OCSO. Thus, as an initial matter, the undersigned finds that Defendant was acting within the scope of his discretionary authority. *See Vinyard,* 311 F.3d at 1346 (holding that it was "clear" that a law enforcement officer "was acting within the course and scope of his discretionary authority" when making an arrest).

Having found that Defendant was acting in the scope of his discretionary duties when he served the arrest warrant, the burden shifts to Plaintiff to show (1) facts demonstrating that a constitutional violation occurred and (2) that the constitutional right was clearly established at the time of the alleged violation. *See Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009). However, "[i]f the conduct did not violate a constitutional right, the inquiry ends there." *Robinson v.*

*Arrugueta*, 415 F.3d 1252, 1255 (11th Cir. 2005). Since Plaintiff did not respond to Defendant's motion as instructed, the undersigned considered the facts alleged in Plaintiff's amended complaint to determine whether Plaintiff has met his burden.

Reading Plaintiff's amended complaint liberally, it appears that Plaintiff claims Defendant Burnham and the other officers were deliberately indifferent to a serious medical need – namely, that he might harm himself – when they arrested him and, also, that they were deliberately indifferent to a serious medical need for failing to treat him for his injuries. Defendant's deliberate indifference, if shown, would violate the Fourteenth Amendment.

To state a deliberate indifference claim, a plaintiff must shoulder three (3) burdens. First, he must satisfy an objective component by showing he had a serious medical need. *See Goebert*, 510 F.3d at 1326 (citation omitted). Defendant does not dispute this element for purposes of his motion. Thus, the undersigned will not discuss it.

Second, Plaintiff must satisfy a subjective component by showing that the defendant acted with deliberate indifference to his serious medical need. *Id.* For a defendant to have acted with deliberate indifference to a plaintiff's serious medical need, the plaintiff must demonstrate: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013), quoting

*Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010). Third, as with any tort claim, the plaintiff must show that the injury was caused by the defendant's wrongful conduct. *Goebert*, 510 F.3d at 1326, citing *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

### A. Subjective Knowledge Of A Serious Risk Of Harm

For Defendant to have subjective knowledge of a serious risk of harm, "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). No liability arises for a defendant's failure to alleviate a significant risk that he should have perceived but did not, and imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (citations omitted).

Plaintiff alleges his wife told "[v]arious unknown deputies and officers" that Plaintiff was unarmed and suffered from PTSD, and that his friend "later" told those same unknown deputies and officers that "Plaintiff *may* be suicidal." ECF Doc. 4 at 8 (emphasis added). As an initial matter, Plaintiff does not allege that Defendant Burnham was one of the deputies or officers privy to that information. To the contrary, Plaintiff alleges simply that Defendant Burnham was given "constructive notice" of Plaintiff's suicidal tendencies by virtue of the information imparted to

*other deputies and officers.*  Imputed or collective knowledge is insufficient to satisfy the subjective component of a claim of deliberate indifference.  *See Burnette*, 533 F.3d at 1331.

Regardless, reading Plaintiff's complaint liberally, even assuming that Defendant Burnham was privy to the information from Plaintiff's wife and friend, that information is insufficient to alert Defendant Burnham – or any of the deputies or officers – that Plaintiff was at risk of serious harm.  Liability for the attempted suicide of a detainee cannot be premised on a finding that officers failed to act to prevent suicide where the risk of suicide was merely speculative.  *Buffington v. Baltimore County, Md.*, 913 F.2d 113, 119 (4th Cir. 1990).  Rather, the facts allegedly known to the officers must be such as to show that the detainee posed a "strong likelihood, rather than a mere possibility" of self-inflicted harm.  *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989).  Absent a previous threat or attempt at suicide, the failure on the part of officers to prevent an attempted suicide does not constitute deliberate indifference to the detainee's medical needs.  *Id.* at 1275.

Thus, even assuming Defendant Burnham was told by Plaintiff's friend that Plaintiff *may* be suicidal, that knowledge, alone, did not give Defendant Burnham (or any of the other unidentified officers) subjective knowledge that Plaintiff was in a serious risk of harm.  There is no allegation, for example, that any of the officers were told Plaintiff had threatened to harm himself and no allegation that any of the

officers were told Plaintiff had previously tried to kill himself. What Plaintiff's friend shared with the officers was, at best, a speculation about Plaintiff's state of mind. Moreover, Plaintiff's wife told the officers that Plaintiff was unarmed; thus, even if Plaintiff was suicidal, the officers would not have been aware that he would or could actually harm himself. Also, when the officers asked Plaintiff if he planned on hurting anyone, Plaintiff said no.

Plaintiff's amended complaint simply fails to allege facts sufficient to show that Defendant Burnham or any of the officers were subjectively aware (1) that Plaintiff would harm himself or (2) that Plaintiff had the means to harm himself. Similarly, there are no allegations showing that Defendant or any of the officers had subjective knowledge that Plaintiff had injured himself. Instead, Plaintiff alleges that he barricaded himself in the bathroom, and there are no allegations showing that Plaintiff told officers he had injured himself while in the bathroom. Thus, Plaintiff has failed to meet the subjective component of a Fourteenth Amendment deliberate indifference claim.

### B. Disregard Of The Risk By Conduct That Is More Than Gross Negligence

Even assuming Defendant Burnham had subjective knowledge that Plaintiff would harm himself or that he was in fact injured, Plaintiff fails to allege facts sufficient to show that Defendant Burnham or any of the officers unreasonably

disregarded that risk of harm by conduct that is more than gross negligence. *Farmer*, 511 U.S. at 847.

Although Plaintiff appears to take issue with how long it took officers to get to him, a review of Plaintiff's factual allegations show that any delay was based on Plaintiff's conduct and not the officers' deliberate indifference. Courts must look to three (3) factors in determining if a delay in treatment rises to the level of deliberate indifference: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *McDaniels v. Lee*, 405 F. App'x 456, 458 (11th Cir. 2010), citing *Goebert*, 510 F.3d at 1327. Although a "few hours' delay in receiving medical care for emergency needs such as … bleeding cuts *may* constitute deliberate indifference," such delay may be acceptable depending on the above factors. *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994) (emphasis added).

Plaintiff admits in his amended complaint that deputies "could not gain entry to the bathroom as the Plaintiff used his body to barricade the door and threated to 'off himself' if they tried entering." ECF Doc. 4 at 8. He admits that the "standoff lasted about two hours with [intermittent] communication." *Id.* at 9. He admits that officers spoke to him through the door, asking if he had a gun and if he planned on hurting anyone, and he told them no. *Id.* Although he claims he lost consciousness due to blood loss intermittently during those two (2) hours, there are no allegations

showing that officers were aware of this. Plaintiff alleges that, just before exiting the bathroom, he told officers he "lost too much blood" to come out on his own and takes issue with officers not coming to his aid, but ignores the fact that he told them not to come in the room or he would "off himself."

Moreover, when Plaintiff finally exited the bathroom "with his lacerated wrists facing upwards in clear view of the deputies," *Id.* at 9, Plaintiff was immediately taken to and placed on a stretcher, carried to an ambulance (where he received treatment), and taken to the hospital (where he received additional treatment). The officers' actions simply do not show a disregard for Plaintiff's injuries by conduct that is more than gross negligence. *See Hunt v. Sycamore Community School Dist. Bd. of Educ.*, 542 F.3d 529, 541-42 (6th Cir. 2008) ("[f]or us to find deliberate indifference … we must find not only that the governmental actor chose to act (or failed to act) despite a subjective awareness of substantial risk of serious injury, but we also must make some assessment that he did not act in furtherance of a countervailing governmental purpose that justified taking that risk.[] Thus, even where the governmental actor is subjectively aware of a substantial risk of serious harm, we will be unlikely to find deliberate indifference if his action was motivated by a countervailing, legitimate governmental purpose").

Similarly, although Plaintiff alleges that the "deputies did not attempt to render any aid at any time" after they opened the door to the bathroom, and even

assuming those officers include Defendant Burnham, Plaintiff also admits he was "placed on a field stretcher and carried to an ambulance." ECF Doc. 4 at 10. Thus, there are no facts demonstrating an unreasonable delay in getting Plaintiff treated by medical professionals. In fact, although Plaintiff alleges that "the deputy" (without identification) told the EMT that Plaintiff was faking his symptoms and had not lost much blood, he also alleges that the EMT disagreed and tried to intubate Plaintiff, and that he was taken to and admitted to Fort Walton Beach Medical Center. ECF Doc. 4 at 10.

### C. Causation

Plaintiff also fails to state a deliberate indifference claim because he has failed to allege facts sufficient to show that his injury was caused by Defendant Burnham's wrongful conduct. *See Goebert*, 510 F.3d at 1326, citing *Hale*, 50 F.3d at 1582. Plaintiff does not allege any facts to show that he cut his wrists because of the actions of any of the officers. Rather, Plaintiff alleges that he was "contemplating suicide" and considering cutting his wrists with the knife before the officers ever made contact with Plaintiff. ECF Doc. 4 at 8. Although Plaintiff alleges that an unknown deputy later fired shots at the window, which "scared" Plaintiff and "caused him to barricade himself in the bathroom," he does not allege that those shots are what

caused him to cut his wrists.[3]  *Id.*  Indeed, had the officers not extracted Plaintiff from the bathroom and transported him to the hospital, Plaintiff would have seemingly continued to lose blood.

Accordingly, because Plaintiff has failed to allege facts sufficient to establish the elements of a Fourteenth Amendment deliberate indifference claim and has failed to respond to the motion to dismiss, the undersigned respectfully recommends that Defendant Burnham's motion to dismiss be granted.

## IV. DISMISSAL OF THE ENTIRE ACTION

On the same grounds, the undersigned also recommends a dismissal of the action as to all the John Doe Officer Defendants.

Defendant Burnham is the only officer that Plaintiff identifies by name.  The other nine (9) defendants Plaintiff seeks to sue are simply identified as John Doe Officers.  Plaintiff refers to the "deputies" collectively throughout his amended complaint and does not break out any factual allegations specific to any deputy or even to Defendant Burnham.  Indeed, Plaintiff identifies Defendant Burnham only one (1) time in his statement of facts, when he alleges simply that Defendant

---

[3] Regardless, Plaintiff does not allege that Defendant Burnham fired, or was responsible for firing, the shots.  *See* ECF Doc. 4 at 8; s*ee also Ashcroft*, 556 U.S. at 678 (finding that the plausibility requirement necessary to survive a motion to dismiss "asks for more than a sheer possibility that a defendant has acted unlawfully").

Case No. 3:19cv3592-MCR-HTC

Burnham was one of two deputies who attempted to serve Plaintiff with an arrest warrant.

Because Plaintiff alleges the same facts as to all the deputies, the same qualified immunity argument addressed above would apply to each of the John Doe officers as well. Thus, the undersigned finds that it would be an act in futility to allow this case to proceed against the John Doe Officers and require the OCSO to identify the officers who were present at the time of Plaintiff's arrest. *See Escobar v. Crosby*, 363 F. Supp. 2d 1361, 1366 (S.D. Fla. 2005) (holding dismissal of prisoner's claims against unserved defendants was appropriate based on both the prisoner's failure to effect timely service under Federal Rule of Civil Procedure 4(m) and his failure to exhaust administrative remedies); *Clark v. State of Ga. Pardons and Paroles Bd.*, 915 F.2d 636, 640-41 (11th Cir. 1990) ("Even if the complaint legally states a claim and the facts are not fantastic, a dismissal on grounds of frivolousness might be justified. For example, if the district court sees that an affirmative defense would defeat the action, a section 1915(d) dismissal is allowed. . . . If an identical claim had recently been litigated unsuccessfully by others, perhaps a section 1915(d) dismissal could be utilized") [4]; *see also Fortson v. Georgia*, 601 F. App'x 772, 774 (11th Cir. 2015) ("[a] judge's authority to dismiss sua sponte a

---

[4] *Clark* cites the previous version of the *in forma pauperis* statute, 28 U.S.C § 1915(d), which, like the current § 1915(e), allowed a court to dismiss a "case . . . if satisfied that the action is frivolous or malicious."

Case No. 3:19cv3592-MCR-HTC

complaint based on frivolity is provided for, even mandated, by § 1915(e)(2)(B)(i)"), citing *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008)).[5]

Moreover, Plaintiff had an opportunity to respond to Burnham's motion to dismiss and has failed to do so. *See* ECF Doc. 13. He will also have an opportunity to file an objection to this Report and Recommendation if he opposes a *sua sponte* dismissal of this action. Thus, he will be given notice and an opportunity to be heard prior to dismissal of the action. *See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349*, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (finding that a party has notice of a district court's intent to *sua sponte* grant summary judgment where a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment); *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (finding that a court may dismiss an action *sua sponte* if the procedures employed include notice and an opportunity to respond).

---

[5] Although Plaintiff is not proceeding *in forma pauperis* and 28 U.S.C. § 1915(e) is therefore inapplicable to this action, 28 U.S.C. § 1915A is applicable and applies the same standards for dismissal as § 1915(e). *See Schaller v. United States*, 2011 WL 7052267 (N.D. Fla. Dec. 29, 2011) ("Plaintiff was a prisoner at the time he filed this case. Therefore, although he has been released from custody, screening pursuant to 28 U.S.C. § 1915A is appropriate in light of his custodial status at the time of filing"); *DiPietro v. Medical Staff at Fulton County Jail*, 2020 WL 1046605 (11th Cir. 2020) ("[w]e review a district court's dismissal of a complaint under § 1915A … applying the same standards as for dismissals under 28 U.S.C. § 1915(e)").

Case No. 3:19cv3592-MCR-HTC

## V.   CONCLUSION

Accordingly, it is respectfully RECOMMENDED that:

1. Defendant Burnham's Motion to Dismiss (ECF Doc. 11) be GRANTED and all claims against Defendant Burnham be DISMISSED.

2. This action also be DISMISSED as to the John Doe Officer Defendants.

3. The clerk be directed to close this file.

Done in Pensacola, Florida this 14th day of April, 2020.

*s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.